DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} This case involves a father's challenge to an order of the domestic relations court that terminated a shared parenting plan and designated the mother as the residential parent instead of the father. The father has argued that the trial court erred because there was no change in circumstances and because the trial court failed to properly consider the best interest factors in Section 3109.04(F)(1) of the Ohio Revised Code. The father failed to raise these issues through objections to the magistrate's decision. Consequently, these arguments may not be raised for the first time on appeal and must be overruled. The father has also claimed that the trial court abused its discretion in failing to provide him with more companionship time, including overnight visits. This Court concludes that the record does not demonstrate that the trial court abused its discretion in establishing the schedule of companionship. The judgment of the trial court is, therefore, affirmed. *Page 2 
 FACTS {¶ 2} Paul Ilg Jr. and Joan Ilg, nka Joan Raatikainen, were divorced on August 2, 2004. Under a shared parenting plan within the divorce decree, their six-year-old daughter, Jennifer, resided with Mr. Ilg for school purposes and spent time with Ms. Raatikainen twice a week.
 {¶ 3} At some point, Jennifer began expressing fear of her father's angry outbursts and told Ms. Raatikainen she wanted to reside permanently with her and just visit her father. As a result, Ms. Raatikainen moved to modify the shared parenting plan and sought an order naming her as the residential parent for school purposes. Arrangements were made for the parties to be evaluated by Sharon Wintz of Family Court Services and Dr. Michael Smith, a psychologist with the Akron Family Institute.
 {¶ 4} At the time of the hearing on the motion, Jennifer was ten years old. At the conclusion of the hearing, the magistrate terminated the shared parenting plan and named Ms. Raatikainen as residential parent and legal custodian. The trial judge overruled Mr. Ilg's objections and entered judgment in accordance with the decision of the magistrate. The trial judge terminated the shared parenting plan, named Ms. Raatikainen residential parent and legal custodian of the child, and ordered companionship for Mr. Ilg every Wednesday from 5:30 p.m. to 8:00 p.m. and every Sunday from 11:00 a.m. to 5:00 p.m. Mr. Ilg has appealed from this judgment and has assigned three errors for review.
 CHANGE OF CIRCUMSTANCES {¶ 5} Mr. Ilg's first assignment of error is that the trial court incorrectly terminated the shared parenting plan when there was no change of circumstances. This Court concludes that this argument has been forfeited. *Page 3 
 {¶ 6} Rule 53 of the Ohio Rules of Civil Procedure governs proceedings before a magistrate and the trial court's duties in adopting or rejecting a magistrate's rulings. Rule 53(D)(3)(b)(iv) provides that, except for a claim of plain error, a party forfeits the right to assign error on appeal with respect to the trial court's adoption of any factual finding or legal conclusion "unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)." Such objections must be specific and all grounds must be stated with particularity. Civ. R. 53(D)(3)(b)(ii). Mr. Ilg filed timely objections to the magistrate's decision and, with leave of court, filed a supplement to the objections. In neither instance, however, did he include an objection to the magistrate's failure to find a change of circumstances. In failing to do so, Mr. Ilg forfeited any error in that regard. The failure to raise this matter before the trial court deprived the court of an opportunity to correct any errors and forfeits the right to challenge those issues on appeal. See O'Brien v. O'Brien,167 Ohio App. 3d 584, 2006-Ohio-1729, at ¶ 19. Consequently, Mr. Ilg has forfeited the right to assign this matter as error on appeal. His first assignment of error is overruled.
 BEST INTEREST OF THE CHILD {¶ 7} Mr. Ilg's second assignment of error is that the trial court failed to properly consider the best interest of the child according to the factors set forth in Section 3109.04(F)(1) of the Ohio Revised Code. Mr. Ilg also failed to include this matter among his objections to the magistrate's decision or the supplement to the objections. Accordingly, he has forfeited the right to assign this matter as error on appeal. Civ. R. 53(D)(3)(b)(iv). His second assignment of error is overruled. *Page 4 
 SCHEDULE OF COMPANIONSHIP {¶ 8} Mr. Ilg's third assignment of error is that the trial court abused its discretion by limiting Mr. Ilg's companionship time to two days per week without overnight visits. He successfully preserved this issue for appeal by objecting to the schedule included in the magistrate's decision.
 {¶ 9} The evidence on this matter included testimony by two expert witnesses, testimony from each parent and Ms. Raatikainen's boyfriend, and an in camera examination of the child. According to the shared parenting plan, Jennifer had been residing with her father and generally saw her mother twice a week. She had expressed a desire to spend more time with her mother and adamantly objected to returning to Mr. Ilg's home after visits with Ms. Raatikainen. Both parents agreed that the child missed her mother and needed to spend more time with her.
 {¶ 10} One of the expert witnesses, Sandra J. Wintz of Family Court Services, testified that both parents were caring and capable and that Jennifer had a positive relationship with each of them. According to Ms. Wintz, although Jennifer was doing well academically while living with her father, she was having emotional problems due to missing her mother and wanting to spend more time with her. Ms. Wintz believed that Jennifer was more closely bonded and more comfortable with her mother. According to Ms. Wintz, Jennifer said she felt safe with her mother. Ms. Wintz noted that Jennifer had a history of sleeping problems and separation anxiety when away from her mother. Ms. Wintz believed that Jennifer should still spend time with both parents, but that she would do better residing with her mother, especially as she entered adolescence.
 {¶ 11} As to Mr. Ilg, Ms. Wintz described him as being very rigid and intolerant of other views. She stated that Jennifer was afraid of making him angry. The child had reportedly *Page 5 
witnessed domestic violence between her parents, her father throwing inanimate objects around the house, and her father breaking a switch plate on the wall when he was angry.
 {¶ 12} Ms. Wintz recommended that Ms. Raatikainen be named the residential parent for school purposes and that Mr. Ilg have at least a "standard order" of companionship time. The so-called "standard order" of the Summit County Domestic Relations court, as found on its website at www.drcourt.org, includes overnight companionship with the nonresidential parent on weekend visits, several holidays, and four weeks of summer vacation. See former Rule 23 of the Local Rules of the Court of Common Pleas of Summit County, Domestic Relations Division, now set forth in Rule 31, effective October 14, 2008.
 {¶ 13} Dr. Michael Smith, clinical psychologist for the Akron Family Institute, also testified as an expert witness. He agreed that both parents are capable of providing physical care of Jennifer, but believed that Ms. Raatikainen would be more responsive to the child's emotional and psychological needs. According to Dr. Smith, Jennifer is more closely bonded to her mother and Ms. Raatikainen is more aware and considerate of her child's needs. The doctor believed Ms. Raatikainen would be more willing to listen to her daughter and allow her to express herself. Dr. Smith testified that he believed Mr. Ilg sees his relationship with his daughter as a means of maintaining contact with his former wife.
 {¶ 14} Dr. Smith testified that Mr. Ilg was narcissistic, rigid, self-centered, and controlling. These findings were consistent with his psychological diagnoses. Dr. Smith believed Mr. Ilg is in denial of many of his parenting problems and that he tends to attribute most of his problems in interpersonal relationships to others. Dr. Smith pointed out that Mr. Ilg has had two failed marriages, has difficulty maintaining employment due to conflicts with coworkers, and has a lack of awareness as to how his negative behavior impacts his daughter. *Page 6 
Dr. Smith stated that Mr. Ilg's traits make it unlikely that he could accomplish positive changes in his parenting through therapy. Furthermore, Dr. Smith expressed concern about whether Mr. Ilg could allow his daughter to develop as her own person.
 {¶ 15} As to the current relationship between Mr. Ilg and his daughter, Dr. Smith stated that it was strained, due, in part, to Mr. Ilg's episodes of anger. Jennifer witnessed her father slap her mother and put his hands around her neck, and also saw him damage several household objects. During Dr. Smith's interview of Jennifer, she made a point of saying that there were guns in her father's house and that she was afraid her father might harm her or someone else. Dr. Smith stated that Mr. Ilg's lack of self-control reinforced this fear in Jennifer.
 {¶ 16} Dr. Smith testified that he did not believe Mr. Ilg fully understands how much of an emotional and psychological impact his behavior has on his daughter. His episodes of anger are isolated, but they have a powerful impact on Jennifer. Dr. Smith believes that part of the reason Jennifer desires to live with her mother is the threatened sense of safety and security she feels in her father's home.
 {¶ 17} Dr. Smith stated that Jennifer interacted easily and naturally with her mother and that she has a close and loving relationship with her. Dr. Smith believes that Ms. Raatikainen would be capable of continuing Jennifer's academic success, a matter of which Mr. Ilg expressed some concern. At the time of Dr. Smith's evaluation of Ms. Raatikainen, the psychologist found that Ms. Raatikainen did not possess any kind of psychological symptoms, disorders, or conditions that would negatively affect her ability to parent her daughter. Dr. Smith also testified that Ms. Raatikainen's boyfriend had an appropriate and positive relationship with Jennifer and would be capable of assisting in parenting her. In conclusion, Dr. Smith *Page 7 
recommended Ms. Raatikainen as the residential parent because she is more emotionally stable, has more awareness, and is more responsive to Jennifer's emotional and psychological needs.
 {¶ 18} Ms. Raatikainen testified that she was seeking designation as the residential parent. She stated that Jennifer was spending more and more time with her, in part, because Jennifer adamantly refused to return to her father. Ms. Raatikainen also explained her work schedule, which included a few evenings and weekends, but explained that she was able to make arrangements for supervision of Jennifer during those times.
 {¶ 19} For his part, Mr. Ilg testified that he was seeking a continuing designation as residential parent for school purposes so that Jennifer could remain in the same school. His recommendation was that his daughter spend more time with her mother during the summer. On cross-examination, Mr. Ilg testified that he had five guns in his home, including two semiautomatic pistols, a 357 magnum, a "454 Casul," and an AK-47. He was enthusiastic about his weapons and did not believe their presence in the home posed a danger to a young girl. He opposed his daughter living with her mother because Ms. Raatikainen was living with a man to whom she was not married.
 {¶ 20} After an in camera interview of Jennifer and with concern for the increasing tension between Mr. Ilg and his daughter, the magistrate attempted to prepare Mr. Ilg for a temporary arrangement under which Jennifer would be spending every other weekend with him. During the in camera interview, Jennifer apparently said that she believed her father wanted to hurt her by preventing her from spending time with her father's extended family and also expressed concern that her father intended to put her pets "to sleep." In preparation for the upcoming weekend visit, the magistrate advised Mr. Ilg to let the child spend some time with his extended family and to avoid any discussion of putting her pets "to sleep." *Page 8 
 {¶ 21} In response, Mr. Ilg denied that he was keeping Jennifer from his extended family to hurt her, but rather explained that there had been no family visits because he had been emotionally hurt by his daughter's desire to leave his home and did not want his mother's or sister's emotions to be "play[ed] with" in the same way. As to the pets, Mr. Ilg stated that he was trying to "enlighten that child to the alternatives that she faces in life . . . and let her think about . . . the impact of her decision-making and the thought process. . . . We all need to be responsible for our actions." When the magistrate again asked Mr. Ilg to simply refrain from discussing the question of putting the pets "to sleep" during the coming weekend, Mr. Ilg replied by claiming that he must "express myself with her" in order to have a "relationship," as urged by Dr. Smith. Later, he testified that "our pets are very near and dear to our hearts," and he wanted to make sure his daughter "understands that [if she were not present in his home to care for them,] for every action, there's a reaction." The magistrate and trial judge were entitled to consider these statements in deciding this case.
 CONCLUSION {¶ 22} Both parents and both experts believed that Jennifer should spend more time with her mother. The trial court found that the child expressed a desire to live with her mother and was fearful of her father's angry outbursts. The judge reasoned that, given the work schedules of the parents, the only tenable way to achieve that goal was to designate the mother as the residential parent and legal custodian. In addition, the trial judge expressed particular concern that Mr. Ilg had five firearms in his home, that he expressed a zealous interest in shooting, that he was unhappy his shooting was restricted to a gun range, and that he did not feel that it was dangerous to have multiple firearms around a young child. *Page 9 
 {¶ 23} Trial courts have broad discretion in their allocation of parental rights and responsibilities and will not be reversed in the absence of an abuse of discretion. Reynolds v. Goll, 75 Ohio St. 3d 121,124 (1996) (citing Trickey v. Trickey, 158 Ohio St. 9, 13 (1952)). Accordingly, this Court must consider whether the trial judge abused her discretion in adopting the magistrate's decision regarding the schedule of companionship. Upon careful review of all the evidence, this Court concludes that the trial judge did not abuse her discretion in adopting the decision of the magistrate in regard to the companionship order in this case. The third assignment of error is overruled.
 {¶ 24} Mr. Ilg's assignments of error are overruled. The judgment of the Summit County Common Pleas Court, Domestic Relations Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 10 
Costs taxed to appellant.
 CARR, P. J., WHITMORE, J., CONCUR *Page 1